CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 19 2018

JULIA C. DUDLEY, CLERK
BY: /s/ H. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KATHERINE MORRIS, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:18-cv-76 |
| ) | |
| v. ) | |
| ) | |
| WILMINGTON SAVINGS FUND ) | |
| SOCIETY, ) | By: Hon. Michael F. Urbanski |
| ) | Chief U.S. District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Katherine Morris (Morris) brings this action against Wilmington Savings Fund Society (WSFS), asserting, in four counts, three breach of contract claims and a fourth claim for violation of federal lending laws. This matter is before the court on WSFS's motion to dismiss.

Morris's complaint was filed in the Circuit Court for the County of Page, Virginia on or about April 16, 2018 and removed to federal court on May 17, 2018. ECF No. 1, 2. The claims center on Morris's default on her mortgage on the property located at 133 Trackside Lane f/k/a 210 1st Street, Shenandoah, Virginia (the Property) and WSFS's subsequent mailing of the "Notice of Default and Intent to Accelerate" (pre-acceleration notice) and foreclosure. ECF No. 1-2, 2. Count I alleges breach of contract by claiming that WSFS failed to give notice according to the terms of the Deed of Trust (DOT) by sending the pre-acceleration notice via certified mail, rather than first-class mail, as required by Section 15 of the DOT. Count II, also a breach of contract claim, alleges that WSFS violated Section 22 of

the DOT by failing to provide a pre-acceleration notice in compliance with Section 22's terms (again because WSFS sent the notice by certified mail). Count III, Morris's final breach of contract claim, alleges that WSFS "made it impossible under Section 19 of the DOT for [Morris] to reinstate the loan five days prior to the sale of the Property." Finally, Count IV alleges violations of the Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA) associated with WSFS's alleged failure to provide payoff balances within a statutorily set period of time.

With respect to Count I, WSFS contends Morris's breach of contract claim fails because it is directly contradicted by the pre-acceleration notice, attached as an exhibit to Morris's complaint. ECF No. 4, 5. Specifically, WSFS maintains the pre-acceleration notice sent to Morris "Via Certified Mail" constitutes first-class mail for purposes of the DOT. Id. at 5. WSFS moves for dismissal as to Count II, contending further that the notice sent met all the requirements of Section 22 of the DOT. Id. at 6. WSFS moves for dismissal as to Count III on the grounds that Virginia law does not recognize an implied covenant of good faith and fair dealing with respect to the DOT. Id. at 9. WSFS alleges Count III therefore fails as a matter of law. Id. Lastly, WSFS moves for dismissal of Count IV because the statutes upon which Morris relies apply only to high-cost mortgages. Id. at 10. WSFS contends the subject loan is not a high-cost mortgage. Id. Even if the statutes Morris relies upon apply, WSFS further alleges Count IV should be dismissed because Morris did not allege a written request for a reinstatement quote as required by statute. Id. at 11.

## A.

Katherine Morris ("Morris"), a resident of Virginia, alleges she owns the Page County property in dispute. Morris entered into a loan for $65,195 secured by the Property and executed by CitiMortgage, Inc. The note for that loan is now held by WSFS. Morris paid full and timely mortgage payments for 8.5 years. On October 12, 2016, loan servicer BSI Financial Services sent the post-acceleration notice, which stated that Morris needed to bring her mortgage payments current by November 16, 2016 or face acceleration of the loan and sale of the Property. Morris was sixteen mortgage payments behind at that time, which amounted to $11,447.90. Morris never received the pre-acceleration notice and did not obtain a copy of it until the day of the detainer hearing on December 8, 2017.

WSFS appointed Commonwealth Trustees, LLC as substitute trustee to sell the Property on December 14, 2016. Morris received a Notice of Substitute Trustee's Sale on April 10, 2017 stating a foreclosure sale of the Property was scheduled for May 8, 2017. Morris immediately requested a reinstatement quote from the subsequent servicer, Fay Servicing, on six occasions. Morris needed a reinstatement quote in a timely manner so she could withdraw funds from her 401(k) retirement account. Fay Servicing provided the reinstatement quote on May 4, 2017. Morris's retirement account company could not release funds until May 10, 2017. Morris had the means to pay the pre-acceleration default amount, but could not access the funds by May 8, 2017.

WSFS, through its substitute trustee, sold the Property by auction on May 8, 2017. After the sale, Fay Servicing offered Morris the opportunity to voluntarily vacate the Property through a "Cash for Keys Agreement and Release" if Morris waived all rights to the Property. Morris refused. WSFS notified Morris on July 17, 2017 that she was to vacate

3

the Property within ten days. On August 8, 2017, WSFS filed an unlawful detainer action against Morris in Page County General District Court. Morris challenged the validity of WSFS's title to the Property based on its breach of material terms of the deed in order to sell the Property. The court determined Morris's claims would likely survive demurrer but ruled it lacked subject matter jurisdiction to decide validity of the title of December 8, 2017. WSFS filed another unlawful detainer action against Morris in Page County Circuit Court on January 29, 2018, which was pending at the time this complaint was filed.

Morris then filed this action in Page County Circuit Court on April 16, 2018 alleging breach of contract as to Sections 15, 22, and 19 of the DOT and violations of TILA and RESPA.

**B.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

In considering a motion to dismiss, the court is "generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). However, other evidence may sometimes be consulted:

> [The court] also considers documents that are explicitly incorporated into the complaint by reference, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits, see Fed. R. Civ. P. 10(c). And . . . [the court] may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. [Sec'y of State for Defence v.] Trimble [Nav. Ltd.], 484 F.3d [700], 705 [(4th Cir. 2007)]; Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Id. at 166.

## C.

WSFS argues Morris's breach of contract claim due to insufficient notice in Count I fails because WSFS sent the pre-acceleration notice via certified mail. The DOT states in Section 15, "Any notice to Borrower in conjunction with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually

5

delivered to Borrower's notice address if sent by other means." ECF No. 1-2, 29. Morris claims WSFS solely used "other means" because the pre-acceleration notice was sent via certified mail and certified mail is not first-class mail as intended by the DOT. WSFS, on the other hand, claims that certified mail is "an optional feature of first-class mail," and not a separate type of mailing.[1] ECF No. 9, 2.

While certified mail might indeed be an extra available option when attempting to send first-class mail, many courts do treat the two as separate mailing mechanisms for purposes of meeting notice requirements. Certified mail and first-class mail are distinguishable because certified mail requires the recipient's signature for delivery. Jones v. Flowers, 547 U.S. 220, 234-35 (2006). While certified mail protects against misdelivery, "use of certified mail might make actual notice less likely in some cases [because] the letter cannot be left like regular mail...." Id. at 235. Further, if a recipient is not home when certified mail is delivered, that piece of mail is returned to the post office and can "only be retrieved from the post office for a specified period of time." Id.

Other jurisdictions have held that, where notice is required by "mail," notice sent via certified mail only complies with the "mailing" requirement upon actual receipt. See, e.g., Aurora Loan Servs., LLC v. Condron, 181 Conn. App. 248, 272–73, 186 A.3d 708, 725–26 (2018) (ruling that, when interpreting the terms of a mortgage deed requiring notice either "mailed by first class mail" or "actually delivered to Borrower's notice address if sent by other means," certified mail constituted other means, requiring actual delivery in order to

---

[1] WSFS claims Morris's attached exhibit, the copy of the notice that she received at the detainer hearing, shows that it was sent by first-class mail. ECF No. 4, 2. Though the envelope is labeled "First-Class Mail," the letter is labeled "Sent Via Certified Mail." ECF No. 1-2, 33 & 34. As certified mail is considered an add-on feature of first-class mail by the USPS, it is consistent with the facts alleged in the complaint that the notice envelope would be marked with a "First-Class Mail" label.

6

satisfy the terms of the deed); Certification from U.S. Court of Appeals for Ninth Circuit v. Kachman, 165 Wash. 2d 404, 411, 198 P.3d 505, 508–09 (Wash. 2008) (question certified in Cornhusker Casualty Ins. Co. v. Kachman, 514 F.3d 982, 987-88 (9th Cir. 2008) (holding that certified mail fell into the "actual delivery prong" of a Washington state statute requiring notice of cancellation of insurance policies to insured individuals either by mail or by actual delivery).[2] Otherwise, notice sent by certified mail qualifies only as an attempt at delivery. Certification from U.S. Court of Appeals for Ninth Circuit, 165 Wash. 2d at 411, 198 P.3d at 508–09; see also Fidelity & Cas. Co. of N.Y. v. Riley, 168 Md. 430, 430 178 A. 250, 253 (Md. 1935) (finding two cancellation notices sent by registered mail were attempts at delivery because neither were actually received, as intended by the insurance policy's "mail" requirement)[3]; Larocque v. R.I. Joint Reinsurance Ass'n, 536 A.2d 529, 530, 532 (R.I. 1988) (holding that under a Rhode Island statute requiring insurers to "give notice" of cancellation to insureds, actual receipt of such notice is required and "may be presumed by proof of an ordinary mailing," but not where an insurer, "by sending notice via certified mail instead of regular postage, increased the risk of nondelivery").[4]

Courts have distinguished between certified mail and first-class mail because first-class mail can simply be delivered to the address and the addressee need not be home. In Re Frazier, 394 B.R. 399, 400 (Bankr. E.D. Va. 2008). Certified mail includes a receipt upon

---

[2] The Washington statute dictating notice requirements required that written notice of cancellation of a policy be either "actually delivered" or "mailed" to the named insured. Cornhusker Cas. Ins. Co., 514 F.3d at 985 (citing RCW § 48.18.290). Similarly, the DOT signed by Morris required notice be "mailed by first class mail" or "actually delivered" to the Borrower's notice address.

[3] Again, the policy addressed in Fidelity & Cas. Co. of New York required "written notice delivered to the insured or mailed to his last address as shown by the records of the company." 168 Md. at 430, 178 A. at 251.

[4] The court is aware that many of the above cited cases deal with notice of the cancellation of insurance policies, which incorporate specific public policy considerations. See Cornhusker Cas. Ins. Co., 514 F.3d at 987; Fidelity & Cas. Co. of N.Y., 168 Md. at 430, 178 A. at 253; Larocque, 536 A.2d at 530. The parallels between the notice requirements of the above referenced statute and policies and those of the DOT, as well as the comparisons made by courts between certified and first-class mail, still offer guidance in determining the issue at hand.

delivery, but if the recipient is not home, the mail cannot be left and there is a risk the mail may never be delivered to the recipient. Id. Further, certified mail "requires an affirmative act" by the recipient. In re Sheffer, 440 B.R. 121, 122 (Bankr. E.D. Va. 2009). The recipient must either sign for the mail upon delivery or go to the post office to pick up the mail, if it could not be delivered earlier. For this reason, courts in many jurisdictions require that, when a certified mailing goes unclaimed, further action must be taken to ensure notice requirements are met. See Hagie v. Oceana County Treasurer, No. 340161, 2018 WL 1881137, at *3 (Mich. Ct. App. Apr. 19, 2018) (ruling that notice requirements were met when the defendant, after first sending two notices by certified mail, sent several more notices through first-class mail and published notice in a local newspaper).

The court finds service by certified mail is not sufficient unless the recipient actually receives the mail. Here, WSFS has not presented evidence of receipt of the certified mail and has not shown evidence of an additional effort to send the pre-acceleration notice through other means. Morris has satisfied her burden at this stage in the proceedings by stating a plausible claim as to Count I. The motion to dismiss Count I is **DENIED**.

**D.**

Count II alleges that WSFS breached the terms of the DOT by violating Section 22:

"Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date of the notice given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." ECF No. 1-2, 31.

8

Morris alleges that WSFS failed to provide a pre-acceleration notice in compliance with these terms because Morris never received such a notice.[5] The reasons for this and whether WSFS's efforts to give notice met the terms of the DOT have been fully addressed in the above section discussing WSFS's motion as it pertains to Count I. The court therefore **DENIES** WSFS's motion to dismiss Count II.

E.

Count III alleges a breach of Section 19 of the DOT, alleging that WSFS did not timely provide a reinstatement quote, breaking the implied covenant of good faith and fair dealing. WSFS contends that this count fails because Virginia law does not recognize the implied covenant outside of the Virginia Uniform Commercial Code (UCC). To the contrary, "the United States Court of Appeals for the Fourth Circuit has consistently held that Virginia does recognize an implied duty of good faith and fair dealing in common law contracts."[6] Stoney Glen, LLC v. Southern Bank and Trust Co., 944 F. Supp. 2d. 460, 465 (2013). See Wolf v. Fed. Nat. Mortg. Ass'n, 512 F. App'x 336, 345 (4th Cir. 2013) (quoting Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) ("…[i]n Virginia, every contract contains an implied covenant of good faith and fair dealing.")). The

---

[5] The pre-acceleration notice attached to the complaint contains all elements listed in Section 22 of the DOT. See ECF No. 1-2, 34–36. WSFS's only plausible alleged violation of this section is the failure to deliver the notice properly, as discussed above.

[6] WSFS relies upon a number of cases in claiming the implied duty of good faith and fair dealing does not apply to transfers of real estate in Virginia. The first, Jones v. Fulton Bank, N.A., dismisses a claim of breach of the implied covenant of good faith and fair dealing in a real estate contract because it was pled under the Uniform Commercial Code and as a separate tort, not because Virginia does not recognize any such implied covenant outside of the UCC. 565 F. App'x 251, 253 (4th Cir. 2014). The second, Hazaimeh v. U.S. Bank Nat. Ass'n, quotes Harrison v. U.S. Bank Nat. Ass'n, basing its decision on that holding. 94 F. Supp. 3d 741, 751 (E.D. Va. 2015); 3:12-CV-00224, 2012 WL 2366163 (E.D. Va. June 20, 2012). In so holding, however, the Harrison court misreads Greenwood Assocs., Inc. v. Crestar Bank, in which the Virginia Supreme Court held that the statutory duty of good faith and fair dealing was inapplicable to a non-UCC contract. 248 Va. 265, 269, 448 S.E.2d 399, 402 (1994). Barring application of a statutory duty does not erase an implied duty, nor was it the Virginia Supreme Court's intention to do so—a lower Virginia Court had already held that an implied covenant of good faith and fair dealing applies in real estate contracts, without disturbance. See Stepp v. Outdoor World Corp., Va. Cir. 106, 1989 WL 1143875, at *4 (Va. Cir. Ct. 1989).

9

elements of a claim for breach of the implied covenant of good faith and fair dealing are: 1) a contractual relationship between the parties; and 2) a breach of the implied covenant. Stoney Glen, LLC, 944 F. Supp. 2d. at 466. Plaintiffs must bring this claim as part of a count for breach of contract, rather than as an independent tort. Id. at 465.

For this claim, Morris relies on Section 19 of the deed which states:

> "Borrower shall have the right to enforcement of this Security Instrument discontinued at any time prior to the earliest of: (1) five days prior to the sale of the Property pursuant to any power of sale contained in this Security Instrument....Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fee, property inspection and valuation fees; and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under the Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred."

ECF No. 1-2, 29–30. Morris contends WSFS breached the implied covenant of good faith and fair dealing because it was impossible for Morris to reinstate the loan five days before the sale. WSFS, for its part, argues that the acceleration of the loan upon Morris's default and the resulting foreclosure were nothing more than the exercise of explicit contractual

rights, and that a claim of breach of the implied covenant of good faith and fair dealing requires "that the alleged breach was dishonest and in bad faith," rather than merely an action that is unfavorable to the plaintiff. ECF No. 4, 10. See Enomoto, 624 F. Supp. 2d at 450–51 (finding that plaintiff's pleading of a breach of the implied covenant of good faith and fair dealing due to defendant's failure to provide him with a space flight and failure to inform him of the high likelihood of medical disqualification after three or four nonrefundable payments was sufficient because it alleged dishonest, rather than merely unfavorable, conduct).

Section 19 of the DOT grants to Morris the right to halt foreclosure proceedings and reinstate the terms of her loan if she cures her default and pays all fees associated with the default. At first glance, this section seems to create rights for the borrower, rather than place duties on the lender. A logical and unavoidable condition precedent to the exercise of these rights, however, is knowledge of what conditions the borrower must meet to discontinue enforcement of the Security Instrument. Indeed, Section 19 includes a long list of potential payments and fees the borrower may or may not have to meet, and even alludes to other potential payments that are not listed. The full reckoning of what a borrower must do to halt foreclosure proceedings is entirely within the control of the lender—here, WSFS through its appointed servicer, Fay Servicing. Implied by the granting of these rights, therefore, is that WSFS alert Morris of what she owes. Morris alleges that she requested a reinstatement quote on April 12, 2017. ECF No. 1-2, 4. Essentially, Morris asked what conditions she would have to meet in order to exercise her Section 19 rights. WSFS did not provide Morris with a

reinstatement quote until May 4, 2017, 22 days after her request and four days before the Property was sold at auction. ECF No. 1-2, 4.

The duty of good faith and fair dealing in Virginia does not prevent a party from exercising contractual rights. Virginia Vermiculite, Ltd. V.W.R. Grace & Co., 156 F.3d 535, 543 (4th Cir. 1998). It does, however, prevent a party from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them. See Restatement (Second) of Contracts § 205 (1990) (describing the concept of "good faith" in contracts) ("A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.") While courts in this circuit have found that exercising contractual rights by accelerating a loan does not constitute a breach of the underlying contract, the court has found no cases in which a borrower alleged inability to halt foreclosure pursuant to a contractual right because of the lender's delay.

Rehbein v. CitiMortgage, Inc., for instance, involved a plaintiff who, after falling behind in mortgage payments, applied to the defendant for a loan modification. 937 F. Supp. 2d 753, 757 (E.D. Va. 2013). The defendant granted a temporary modification, but denied the final modification. Id. The defendant initiated foreclosure proceedings; the plaintiff filed suit to halt these proceedings, alleging that, by failing to grant the loan modification, the defendant had breached the implied covenant of good faith and fair dealing. Id. The court disagreed and ruled that nothing in the promissory note or the deed of trust obligated the

defendant to grant the plaintiff a loan modification, and that by foreclosing, the defendant had been exercising a clear contractual right. Id.

Here, however, it is Morris who had a clear contractual right. Her complaint alleges that she was not attempting to alter the terms of her contract, as the plaintiff in Rehbein did, but to fulfill the terms of the contract as written. To do that, however, she needed a reinstatement quote which she could only secure with the opposing party's cooperation. She did not receive this reinstatement quote until it was too late for her to exercise her rights. Other cases dealing with the implied covenant and acceleration of mortgages are similarly distinguishable. Cook v. CitiFinancial, Inc., No. 3:14-cv-00007, 2014 WL 2040070, at *6 (W.D. Va. May 16, 2014) (plaintiff's claim of breach of the implied covenant of good faith and fair dealing dismissed because it was pled pursuant to the UCC, as an independent tort, and in response defendant's foreclosure after a refusal to modify the loan); Vazzana v. CitiMortgage, Inc., No. 7:12-cv-00497, 2013 WL 2423092, at *4 (W.D. Va. June 4, 2013) (dismissing a claim of breach of the implied covenant of good faith and fair dealing when the plaintiff made no attempt to reinstate the loan after notice was sent).

Morris has sufficiently pled a plausible breach of the implied covenant of good faith and fair dealing to pass the threshold of 12(b)(6). WSFS's motion to dismiss Count III is therefore **DENIED**.

### E.

Finally, Morris alleges violations of the Truth in Lending Act ("TILA") 15 U.S.C. § 1639(t)(2) and the Real Estate Settlement Procedures Act ("RESPA") 12 C.F.R. § 226.36(c)(1)(iii). The statute Morris relies on (15 U.S.C. § 1639(t)(2)), and its implementing

13

regulation (12 C.F.R. § 226.36(c)(1)(iii)), apply only to high-cost mortgages. See 15 U.S.C. § 1639(a), (t)(1)(A) ("pay off the outstanding balance on a high-cost mortgage").[7] A high-cost mortgage is a transaction with a rate that "will exceed by more than 6.5 percentage points... the average prime offer rate." 15 U.S.C. § 1602(bb)(1)(A)(i)(I). The average prime offer rate "means the average prime offer rate for a comparable transaction as of the date on which the interest rate for the transaction is set, as published by the Bureau." 15 U.S.C. § 1639c(b)(2)(B).

Here, the loan was a 30-year fixed rate mortgage with an 11.5% interest rate entered into on October 26, 2007. DOT ¶ F. According to the Federal Financial Institutions Examination Council ("FFEIC"), the average prime offer rate on October 26, 2007 for a 30-year fixed loan was 6.45%.[8] The statutory threshold, 6.5%, plus the average prime offer rate, 6.45%, equals 12.95%. See 15 U.S.C. § 1602(bb)(1)(A)(i)(I). This total, 12.95% exceeds Morris's rate of 11.15%. Therefore, Morris's loan is not a "high-cost" mortgage within the meaning of the Truth in Lending Act ("TILA") 15 U.S.C. § 1639(t)(2) or the Real Estate Settlement Procedures Act ("RESPA") 12 C.F.R. § 226.36(c)(1)(iii). These statutes are inapplicable to Morris's DOT, therefore, the motion to dismiss Count IV is **GRANTED**.

F.

---

[7] Courts recognize the provisions of 15 U.S.C. § 1639 were an amendment added to TILA "by HOEPA, which requires lenders to make additional disclosures to borrowers of 'high-cost' or 'high-rate' loans." Cunningham v. Nationscredit Fin. Servs. Corp., 497 F.3d 714, 717 (7th Cir. 2007); see also Stephens v. Bank of Am. Home Loans, Inc., No. 5:16-cv-660-F, 2017 WL 384315, at *4 (E.D.N.C. Jan. 25, 2017). Also, because 15 U.S.C. § 1639 is the implementing authority for 12 C.F.R. § 226.36(c)(1)(iii), 12 C.F.R. § 226.36(c)(1)(iii) is also specific to high-cost mortgages. See Truth in Lending Act, 73 FR 445522-01, 44526 thru 44527.

[8] See "Average Prime Offer Rates" Tables, FEDERAL FINANCIAL INSTITUTIONS EXAMINATION COUNCIL, https://www.ffiec.gov/ratespread/aportables.htm (calculating the Average Prime Offer Rate and publishing weekly updates).

Accordingly, and for the reasons set forth herein, the court **GRANTS** the motion to dismiss Counts I, II, and III, and **DENIES** the motion to dismiss Count IV.

An appropriate order will be entered.

Entered: 12/18/18

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge